UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

UNITED STATES OF AMERICA

VS.                                              CASE NO: 2:13-cr-9-FtM-38UAM

CHETSADA SRISANTHIA

**ORDER**[1]

This matter comes before the Court on Defendant Chetsada Srisanthia's Motion for Reconsideration of Order Partially Denying Motion to Suppress (Doc. #43) filed on July 3, 2013. The Government has not filed a response, the time to do so has expired, and the Court has been informed by the Government that it does not intend to file a response.

Defendant Srisanthia moves the Court to reconsider its Order partially denying Defendant's Motion to Suppress. In his initial Motion (Doc. #21), Defendant sought suppression of: (1) his recorded post-arrest statement taken at the Fort Myers Police Department; (2) all materials seized as a result of the search at his residence; and (3) his alleged initial statements made to the police before his formal arrest. On June 17, 2013, the Court granted the Motion in part, ordered suppression of the post-arrest statement, but otherwise denied the Motion. (Doc. #41).

---

[1] Disclaimer: Documents filed in CM/ECF may contain hyperlinks to other documents or Web sites. These hyperlinks are provided only for users' convenience. Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees. By allowing hyperlinks to other Web sites, this court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.

Motions to reconsider in criminal cases are treated like motions to reconsider in civil suits. United States v. Presley, No. 5:12-CR-2 DCB FKB, 2013 WL 1980388 at *2 (S.D. Miss. May 13, 2013) (citing United States v. Rollins, 607 F.3d 500, 502 (7th Cir. 2010)); see also United States v. Healy, 376 U.S. 75, 84 (1964); United States v. Dickerson, 166 F.3d 667, 678-79 (4th Cir. 1999). Reconsideration of a court's previous order is an extraordinary remedy and, thus, is a power which should be used sparingly. Carter v. Premier Restaurant Management, 2006 WL 2620302 (M.D. Fla. Sept. 13, 2006) (citing American Ass'n of People with Disabilities v. Hood, 278 F. Supp. 2d 1337, 1339 (M.D. Fla. 2003)). The courts have "delineated three major grounds justifying reconsideration: (1) an intervening change in the controlling law; (2) the availability of new evidence; (3) the need to correct clear error or prevent manifest injustice." Susman v. Salem, Saxon & Meilson, P.A., 153 F.R.D. 689, 904 (M.D. Fla. 1994). "A motion for reconsideration should raise new issues, not merely readdress issues litigated previously." Paine Webber Income Props. Three Ltd. Partnership v. Mobil Oil Corp., 902 F. Supp. 1514, 1521 (M.D. Fla. 1995). The motion must set forth facts or law of a strongly convincing nature to demonstrate to the court the reason to reverse its prior decision. Carter, 2006 WL 2620302 at *1 (citing Taylor Woodrow Construction Corp. v. Sarasota/Manatee Authority, 814 F. Supp. 1072, 1072-1073 (M.D. Fla. 1993)). A motion for reconsideration does not provide an opportunity to simply reargue – or argue for the first time – an issue the Court has already determined. Carter, 2006 WL 2620302 at * 1. The Court's opinions "are not intended as mere first drafts, subject to revision and reconsideration at a litigant's pleasure." Id. (citing Quaker Alloy Casting Co. v. Gulfco Industries, Inc., 123 F.R.D. 282, 288 (N.D. Ill. 1988)). "The burden is upon

the movant to establish the extraordinary circumstances supporting reconsideration." Mannings v. School Bd. Of Hillsboro County, Fla., 149 F.R.D. 235, 235 (M.D. Fla. 1993). "Unless the movant's arguments fall into the limited categories outlined above, a motion to reconsider must be denied." Carter, 2006 WL 2620302 at *1.

Defendant argues first that because the Defendant did not have a sufficient grasp of the English language to understand the Miranda rights read to him (Doc. #41, p. 34), he could hardly have sufficient understanding of English to understand the consent to search form presented to him. Defendant continues to maintain that he lacked sufficient understanding of English to consent to a search of his residence. Defendant argues that while the Court was clearly correct that there was not an effective waiver of Miranda, as the Court explicitly recognized, the reason was that Srisanthia lacked sufficient comprehension to comprehend these rights. Srisanthia argues in the instant Motion that the Court's Order is in error as this consideration equally undermines the validity of the alleged consent provided by the Defendant for law enforcement to enter his residence at 4735 DeLeon Street, Unit 123 C, Fort Myers, Florida. Defendant maintains that Detective Langton's testimony as to Defendant's response to her reading of the consent to search form was essentially the same has her summary of Srisanthia's response to the reading of the Miranda form.

In its Order, the Court considered the totality of the circumstances to determine if the consent to search Defendant's apartment was voluntary, as required. (Doc. #41, pp. 21-22) (citing United States v. Drayton, 536 U.S. 194, 207, 122 S. Ct. 2105, 153 L. Ed. 2d 242 (2002)). As discussed by this Court in its Order, Defendant was located by law enforcement at his workplace, a 7-Eleven store in Fort Myers, after Cassaundra

Holden and Samantha Fraser called police to inform them that they found videos of child pornography on Defendant's computer. Detective Langton testified that she asked Defendant at the 7-Eleven if he was willing to show her the images and videos on his computer to which the Defendant responded yes. Detective Langton testified that while she was speaking to him at the 7-Eleven, he did not appear to have any difficulty understanding what she was telling him. The Defendant did not have access to a vehicle, so the police took him to his residence located at 4735 DeLeon Street, Unit 123 C, Fort Myers, Florida, approximately one block from the 7-Eleven. He was not being detained nor was he under arrest at that time. He was not handcuffed. Thus, the Court found that the Defendant voluntarily gave Detective Langton consent by offering to show her the videos on his computer. (Doc. #41, pp. 21-22). As further discussed by the Court in its Order, once outside the apartment, Detective Langton testified that she read the Fort Myers Police Department Consent to Search Form to the Defendant, containing eight (8) statements. (Govt. Ex. 1). Detective Langton testified that the Defendant agreed to give the officers consent to enter his apartment, after which he signed the form. (Govt. Ex. 1). She stated on cross examination that the Defendant appeared to understand and did not ask any detailed questions about the statements on the form. After signing the form, the Defendant told Detective Langton that he had underage pornography on his computer. Defendant then led the officers into his apartment and showed them the video.

  Defendant has presented the Court with no facts or law which would persuade it to reconsider its finding on the voluntariness of Defendant's consent to search his apartment, nor the need to correct clear error or prevent manifest injustice. As outlined

by the Court in its Order, Defendant responded yes when asked by law enforcement at the 7-Eleven whether they could look at images and videos on his computer, he voluntarily went with law enforcement to his apartment, and he led law enforcement into his apartment after he signed the consent to search form, led them to his computer, and showed them the video. (Doc. #41, pp. 21-22). As cited by the Court in its Order, the Eleventh Circuit stated in United States v. Rios that "[w]hether Rios stated that the officers could 'search' his room or that they could 'check' his room, a reasonable police officer would have believed that Rios was allowing him to search for narcotics. . . ." 443 F. App'x 433, 438 (11th Cir. 2011). In this case, based on the totality of circumstances, a reasonable police officer would have believed that Srisanthia was allowing the officers to enter his home to show them images and videos on his computer. Id. at 438.

Defendant next argues that the application of "inevitable discovery" in this case is in error because the Government never cited this argument in its written pleadings or at the evidentiary hearing and because there was no evidentiary foundation for such a conclusion as there was no testimony from Detective Langton that she would have pursued, much less was in the process of pursuing, a search warrant based solely on what had been related to her by two civilians, Holden and Fraser. To the contrary, Defendant points to the fact that Detective Langton did not seek a search warrant until she had personally made observations at the residence.

In its Order, the Court held alternatively that the results of the search warrant were not subject to suppression because of the "inevitable discovery" doctrine, being that even if the consent to search was invalid, the search warrant was supported by probable cause to believe that Fla. Stat § 827.071(5) had been violated based upon the

5

supporting affidavit which contained information from the sworn and taped statements of Fraser and Holden.  (Doc. #43, pp. 23-27).  The Court agrees with the Defendant that to qualify for admissibility under the inevitable discovery doctrine, "the prosecution must demonstrate that the lawful means which made discovery inevitable were possessed by the police and were being actively pursued *prior* to the occurrence of the illegal conduct."  United States v. Satterfield, 743 F.2d 827, 846 (11th Cir. 1984) (emphasis in original).  In this case, the Government did not argue inevitable discovery and there was no testimony or evidence presented by the Government to satisfy the inevitable discovery doctrine as set forth in Satterfield.  Thus, the motion to reconsider on this issue is granted.

Lastly, Defendant argues that the Court should reconsider its conclusion that the results of the search warrant should not be suppressed pursuant to the "independent source" doctrine and United States v. Chaves, 169 F.3d 687, 692 (11th Cir. 1999).  Defendant points out again that the Government failed to argue independent source and therefore Defendant had no opportunity to be heard on this issue.  Further, Defendant argues that there was no evidence that the decision to seek the search warrant was unrelated to the observations by Detective Langton during the course of her unlawful entry and there was no evidentiary foundation for any claim by the Government that the decision to seek the search warrant was unrelated to her observations in the residence.  The Court agrees with the Defendant in that the Government has presented no evidence that the decision to seek the search warrant in this case was not prompted by what they had seen during the initial entry, as in Chaves.  Id.  Thus, the motion to reconsider on this issue is granted.

Although the Government was aware of the Defendant's argument regarding reconsideration, they did not respond, and, in fact, made a conscious decision not to do so. Therefore, the Court grants Defendant's Motion for Reconsideration as to the inevitable discovery and independent source issues and denies it in all other respects. However, this does not change the Court's ultimate ruling on the Defendant's Motion to Suppress. The Motion to Suppress is granted as to the taped statement provided by Defendant to law enforcement on October 21, 2013, and is otherwise denied. (Doc. #41).

Accordingly, it is now

**ORDERED:**

Defendant Chetsada Srisanthia's Motion for Reconsideration of Order Partially Denying Motion to Suppress (Doc. #43) is **GRANTED in part and DENIED in part**. The Court **GRANTS** Defendant's Motion for Reconsideration as to the inevitable discovery and independent source issues and **DENIES** it in all other respects. The Motion to Suppress is granted as to the taped statement provided by Defendant to law enforcement on October 21, 2013, and is otherwise denied. (See Doc. #41).

**DONE AND ORDERED** at Fort Myers, Florida, this 23rd day of July, 2013.

*[signature: Sheri Polster Chappell]*
SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies: Counsel of Record